**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0001051
07-FEB-2014
08:39 AM**

NO. CAAP-11-0001051

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
STANLEY CANOSA, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-1524)


MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Defendant-Appellant Stanley Canosa (Canosa) appeals from a Judgment of Conviction and Sentence (Judgment) filed on November 29, 2011, in the Circuit Court of the First Circuit (circuit court).[1] Judgment was entered against Canosa for Count I, Burglary in the First Degree in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993);[2] Count II, Sexual Assault

---

[1] The Honorable Randal K. O. Lee presided.

[2] HRS § 708-810 provides in pertinent part:

> §708-810 **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
>
> . . . .
> (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.
>
> . . . .
> (3) Burglary in the first degree is a class B felony.

in the First Degree in violation of HRS § 707-730(1)(a) (Supp. 2013);[3] and Count III, Unauthorized Entry in a Dwelling in violation of HRS § 708-812.6 (Supp. 2010).[4] The jury found Canosa not guilty of Counts IV and V, both charging Sexual Assault in the Third Degree in violation of HRS § 707-732(1)(f) (Supp. 2013), which involved different complaining witnesses than the complaining witness for Counts I-III.[5] Canosa was sentenced to serve an extended term of imprisonment of twenty (20) years, in Count I; life with the possibility of parole, in Count II; and ten (10) years in Count III, concurrent, with credit for time already served. The sentences are to run concurrent with any other sentence now being served.

---

[3] HRS § 707-730 provides in pertinent part:

> §707-730 Sexual assault in the first degree. (1) A person commits the offense of sexual assault in the first degree if:
> (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion;
>
> . . . .
>
> (2) Sexual assault in the first degree is a class A felony.

[4] In 2009, HRS § 708-812.6 provided in pertinent part:

> [§708-812.6] Unauthorized entry in a dwelling. (1) A person commits the offense of unauthorized entry in a dwelling if the person intentionally or knowingly enters unlawfully into a dwelling with reckless disregard of the risk that another person was lawfully present in the dwelling, and another person was lawfully present in the dwelling.
> (2) Unauthorized entry in a dwelling is a class C felony.

[5] HRS § 707-732 provides in pertinent part:

> §707-732 Sexual assault in the third degree. (1) A person commits the offense of sexual assault in the third degree if:
>
> . . . .
>
> (f) The person knowingly, by strong compulsion, has sexual contact with another person or causes another person to have sexual contact with the actor.
>
> . . . .
>
> (2) Sexual assault in the third degree is a class C felony.

The incidents pertinent to Counts I-III occurred on a boat at the Keehi Lagoon small boat harbor (Keehi Lagoon), where the complaining witness for those counts (CW) lived with her boyfriend.

On appeal, Canosa contends: (1) the circuit court abused its discretion in denying Canosa's Motion to Dismiss Indictment for Phase I and Phase II Evidence Presented to the Grand Jury; .(2) the circuit court abused its discretion in denying Canosa's Motion to Dismiss Indictment for Violation of Hawaiʻi Rules of Penal Procedure (HRPP) Rule 5(c)(1) & (2), and for Lack of Jurisdiction; (3) the circuit court abused its discretion in denying Canosa's Motion to Dismiss Indictment for Failure to Present Clearly Exculpatory Evidence to the Grand Jury; (4) the circuit court abused its discretion in denying Canosa's Motion for New Trial; (5) the circuit court abused its discretion in denying Canosa's motion·to dismiss Counts I-III due to the destruction of a complaining witness's written statement to police; (6) the circuit court abused its discretion in denying Canosa's motion for severance of charges; (7) the trial Deputy Prosecuting Attorney (DPA) committed misconduct during voir dire by asking questions that were meant to indoctrinate the jurors to be favorable to the State's case; and (8) the DPA made improper statements during closing argument that cumulatively deprived Canosa of his right to a fair trial.

We address the pertinent points of error below and reject most of them. However, we vacate Canosa's convictions on Counts I-III due to prosecutorial misconduct that was not harmless beyond a reasonable doubt in this case.

**I. Motions to Dismiss Indictment**

    **A.    Motion to Dismiss the Indictment for Phase I and Phase II Evidence Presented to the Grand Jury**

Canosa argues that the circuit court abused its discretion in denying his motion to dismiss the indictment for allegedly using Phase I and Phase II language in the grand jury proceedings. Canosa contends that because Phase I refers to the

3

probable cause phase and Phase II refers to an extended term phase, such references notified the grand jury that Canosa had prior convictions.

Canosa fails to indicate where in the record references were made before the grand jury to Phase I and Phase II.[6] It appears that there were only four brief references to Phase I when the DPA presented charging language to the grand jury and then entered the charging language as an exhibit. It does not appear that there was any reference to Phase II during the relevant grand jury proceedings, as alleged by Canosa. Further, there is nothing in the record to establish that the grand jury in this case knew the meaning as to Phase I or that reference to Phase I would necessarily entail an extended sentence Phase II.

Canosa has not established prejudice based on the passing references to Phase I. See State v. Griffin, 126 Hawai'i 40, 53, 266 P.3d 448, 461 (App. 2011) (noting that the defendant has the burden regarding motions to dismiss for prosecutorial misconduct in grand jury proceedings). Moreover, even without considering Canosa's burden, the record here does not demonstrate that the deputy prosecutor's brief references to Phase I "prevent[ed] the exercise of fairness and impartiality by the grand jury[,]" State v. Chong, 86 Hawai'i 282, 289, 949 P.2d 122, 129 (1997) (emphasis in original omitted); "clearly infringe[d] upon the [grand] jury's decision-making function[,]" State v. Pulawa, 62 Haw. 209, 218, 614 P.2d 373, 378 (1980) (citation omitted); or "invade[d] the province of the grand jury or tend[ed] to induce action other than that which the jurors in their uninfluenced judgment [would] deem warranted on the evidence fairly presented before them." State v. Joao, 53 Haw. 226, 229, 491 P.2d 1089, 1091 (1971) (citation omitted).

---

[6] Canosa's opening brief fails to properly cite to the record multiple times and simply references "RA:JEFS". This is not a proper record cite and fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.

4

The circuit court did not abuse its discretion in denying Canosa's motion to dismiss the indictment based on the deputy prosecutor's references to Phase I before the grand jury.

**B.    Motion to Dismiss the Indictment for Violation of HRPP Rule 5(c)**

Canosa contends that the circuit court abused its discretion in denying his motion to dismiss the indictment for violating HRPP Rule 5(c), asserting that he was entitled to a preliminary hearing and the circuit court lacked jurisdiction because the grand jury indictment was not issued *prior to the date* of the preliminary hearing scheduled in the district court. The preliminary hearing was scheduled for the district court's afternoon calendar on September 29, 2009.[7]  It is undisputed that the grand jury indictment was filed on the same date at 1:35 p.m., and that at 1:37 p.m. the scheduled preliminary hearing was continued based on the State's representation that there had been a grand jury indictment.  The continued preliminary hearing was subsequently stricken due to the grand jury indictment.  The circuit court ruled that Canosa was not entitled to a preliminary hearing because he was indicted by the grand jury before his preliminary hearing was called in the district court.

HRPP Rule 5(c) outlines the procedure by which the district courts handle felony charges.  Canosa relies on that part of the rule which states that, if a defendant does not waive a preliminary hearing, "the court shall schedule a preliminary hearing, provided that such hearing shall not be held if the defendant is indicted or charged by information before the date set for such hearing."  HRPP Rule 5(c)(1).  This provision mandates that a scheduled preliminary hearing not proceed if an indictment is filed before the date set for the hearing; however, it does not suggest or mandate that a preliminary hearing *must*

---

[7]  Canosa contends the preliminary hearing was scheduled for 1:30 p.m., but there is nothing in the record to establish the actual time.  Regardless, given the other undisputed facts, this fact is not dispositive.

*proceed* when a grand jury indictment is handed down on the same date that a preliminary hearing is scheduled.

The Hawai'i Supreme Court has determined that "[t]he right to a preliminary examination is not a constitutional right[,]" and the purpose of a preliminary hearing is to attain a determination of probable cause. Chung v. Ogata (Ogata I), 53 Haw. 364, 366, 493 P.2d 1342, 1343 (1972); State v. Tominaga, 45 Haw. 604, 609, 372 P.2d 356, 359 (1962). A preliminary hearing and an indictment are separate avenues to establish probable cause. HRPP Rule 7. The return of an indictment removes a defendant's right to a preliminary hearing before the district court and all attendant "benefits." See Chung v. Ogata (Ogata II), 53 Haw. 395, 495 P.2d 26 (1972). Once the grand jury indicts, the district court no longer has jurisdiction to hold a preliminary hearing, even when an indictment is issued between the original scheduled hearing and the continued hearing. Tominaga, 45 Haw. at 610, 372 P.2d at 360.[8]

The circuit court did not abuse its discretion in denying Canosa's motion to dismiss the indictment based on HRPP Rule 5(c).

---

[8] Canosa asserts that Tominaga was decided prior to the effective date of the HRPP in 1977 and contends that the purpose of a preliminary hearing under HRPP 5(c) is different than a preliminary hearing when Tominaga was decided. We do not agree. Tominaga and the Ogata cases were decided prior to 1977, when District Court Rules of Penal Procedure (DCRPP) and separate Hawai'i Rules of Criminal Procedure (HRCrP) governed preliminary hearings and indictments, respectively. However, the current HRPP is substantially modeled after the DCRPP and HRCrP, with changes made to accommodate new legal precedent and to bring Hawaii's rules more in line with the federal rules. See generally Introduction and HRPP Rule 5, note (Proposed Draft Sept. 15, 1975). The propositions in Tominaga and the Ogata cases are not undermined by the adoption of the HRPP. The Note for proposed HRPP Rule 5(c) states in relevant part that subsection (c)(1) is the same as DCRPP 25(a), except for certain changes including "the last sentence has been modified to conform to the language in Federal Rule 5(c), in order to make clear that no preliminary need be held not only when an indictment is returned but also when a complaint is filed in the circuit court (upon waiver of indictment)." HRPP Rule 5, note at 15 (Proposed Draft Sept. 15, 1975).

C.  **Motion to Dismiss for Failure to Present Clearly Exculpatory Evidence to the Grand Jury**

Canosa contends that the circuit court abused its discretion in denying his motion to dismiss based on the State's failure to present clearly exculpatory evidence to the grand jury.  Canosa contends that the State failed to present to the grand jury: the testimony of Officer Gregg Arii (Officer Arii), who initially interviewed the CW related to the alleged sexual assault that was later charged in Count II (Sexual Assault in the First Degree) and who characterized the incident as an *attempted* Sex Assault; and the testimony of Dr. Wayne Lee, who examined the CW and found no visible signs of trauma.

During grand jury proceedings, the prosecution is not required to present evidence which may have a tendency to exculpate the accused, but is required to present evidence which is clearly exculpatory.  State v. Higa, 126 Hawai'i 247, 264, 269 P.3d 782, 799 (App. 2012).

The evidence that Canosa contends should have been presented to the grand jury is not clearly exculpatory.  First, Officer Arii's report stated that the CW asserted that Canosa "reached into her shorts and touched her vaginal area attempting to have sex with her," which potentially corroborates the CW's allegation.  The fact that Officer Arii characterized the incident as an attempted sexual assault at that early stage of the investigation is not clearly exculpatory.

Second, Dr. Lee's trial testimony demonstrates that the fact the CW had no visible signs of trauma on her vagina is not clearly exculpatory.  Dr. Lee testified that in this type of situation, "more than half the time" there are no signs of injury.  Dr. Lee concluded that the CW's physical condition was consistent with his finding that minimal penetration had occurred.  Dr. Lee's isolated statement identified by Canosa is not clearly exculpatory.

The circuit court did not abuse its discretion in denying Canosa's motion to dismiss the indictment for failure by the State to present clearly exculpatory evidence to the grand jury.

## II. Motion to Dismiss for Loss/Destruction of Evidence

Canosa contends that the circuit court abused its discretion in denying his oral motion to dismiss Counts I-III because of the loss or destruction of the CW's written statement. The circuit court did not err because it is questionable whether the statement ever existed. The only testimony which establishes its existence is from the CW herself. All of the police officers who testified at the Hawai'i Rules of Evidence (HRE) Rule 412 hearing regarding the written statement stated that no such statement existed.

Even assuming the statement existed, the CW testified that the written statement contained basically the same details she related in her video recorded statement given to police and in her grand jury testimony. Given this record, there is no indication that the purported written statement would have assisted Canosa.

Due to the speculative nature of the written statement, we cannot say that it "is so critical to the defense as to make a criminal trial fundamentally unfair without it." State v. Steger, 114 Hawai'i 162, 169, 158 P.3d 280, 287 (App. 2006) (citation and internal quotation marks omitted).

## III. Prosecutorial Misconduct During Closing Arguments

Canosa contends that the DPA at trial made five improper statements during closing arguments that individually and cumulatively deprived Canosa of a fair trial.

"Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." State v. Carvalho, 106 Hawai'i 13, 16 n.7, 100 P.3d 607, 610 n.7 (App. 2004) (citation omitted). An appellate court "evaluates claims of improper statements by prosecutors by first

8

determining whether the statements are improper, and then determining whether the misconduct is harmless." State v. Tuua, 125 Hawai'i 10, 14, 250 P.3d 273, 277 (2011). "To determine whether reversal is required under HRPP Rule 52(a) because of improper remarks by a prosecutor which could affect Defendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review." State v. Sanchez, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App. 1996) (citation and brackets omitted). "In applying [this] standard, the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Balisbisana, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (citation omitted). In assessing whether prosecutorial misconduct was harmless beyond a reasonable doubt, the following factors are considered: "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." State v. Pacheco, 96 Hawai'i 83, 93, 26 P.3d 572, 582 (2001) (citation omitted) (block quote format altered).

The defense theory during trial was that the CW and her boyfriend owed Canosa money for marijuana. Canosa testified that he had gone to Keehi Lagoon multiple times to try to collect the money he was owed, but CW and her boyfriend kept making excuses and did not pay him. As to Count III, Canosa claims he wanted his money and the CW allowed him onto the boat to wait for her boyfriend. As to the incident related to Counts I and II, Canosa claims to have gone to Keehi Lagoon early in the morning to again try to collect the debt because he had learned that the CW's boyfriend was in the process of selling a boat. Canosa claims that he spoke to the CW's boyfriend that morning, who was working to moor a boat and told Canosa to come back later. Canosa claims that when he came back that morning, the CW's boyfriend had not returned, but that the CW invited him on to their boat to wait. Canosa claims he ultimately left without incident before the CW's boyfriend returned.

During closing argument, the DPA argued

[Canosa's] the only one who has an interest in the outcome of this case.  Ask yourselves if [he] was telling the truth. He told you about this 75-dollar debt for marijuana.  Well, first of all, do you believe that?  Do you believe that a dealer would give drugs to someone and not get the money right away?  Does this make sense? And even if you do believe it, is [the CW] going to report sexual assault over $75 and go through everything she has had to do?

Canosa did not object.

The defense argued during closing argument, *inter alia*, that a debt was owed to Canosa, that CW's boyfriend kept giving Canosa the runaround, that CW's boyfriend was about to get $7,000 for selling a boat but did not want to pay Canosa, and thus CW and her boyfriend had the motive to lie in this case.

In rebuttal closing argument, the DPA again attempted to comment on the alleged debt:

[DPA:] . . . Is $75 going to make a --
[Canosa's counsel]: We --
[DPA]: -- difference to [the CW's boyfriend]?
[Canosa's counsel]: We object.  Nobody mentioned $75.  We object, and we move to strike.

The court overruled the objection, stating it would "leave it to the jurors' memories."

The DPA's comments were improper.  The State admits the "$75" figure is not in evidence.[9]  During closing arguments, a prosecutor may "draw reasonable inference from the evidence and wide latitude is allowed in discussing the evidence."  State v. Mars, 116 Hawaiʻi 125, 142, 170 P.3d 861, 878 (App. 2007) (citation omitted).  However, the prosecutor must refrain from commenting on "matters outside the evidence adduced at trial." Tuua, 125 Hawaiʻi at 14, 250 P.3d at 277.  Here, the prosecution associated an exact dollar figure to a debt that had only been referred to as a general debt owed.  The DPA then leveraged the specific dollar figure as an attack on the credibility of the defense's theory of the case and a simultaneous buttressing of

---

[9]  The State acknowledges the only time a witness identified the debt for $75 was during Detective Dwight Sato's testimony before the grand jury.

the credibility of the CW. The introduction of facts not in evidence was improper.

The DPA's improper statement was not harmless beyond a reasonable doubt. As to the first factor, the nature of the conduct, the DPA's argument relying on facts not in evidence was particularly harmful because it permitted the State to directly attack Canosa's theory of defense by suggesting that the CW would not have subjected herself to the negative effects of reporting the alleged crime just to avoid such a small debt owed to Canosa. The jury rejected Canosa's defense in relation to the counts involving the CW (while acquitting him of Counts IV and V alleging Sexual Assault in the Third Degree involving other complaining witnesses). In a case dependent to a large degree on credibility, the first factor favors Canosa.

As to the second factor, Canosa did not initially object, and therefore no curative instruction was given after the DPA first used the $75 figure during closing argument. However, after Canosa objected to the DPA's use of the $75 figure during rebuttal argument, the circuit court overruled the objection and left the issue to the jurors' recollections. The State argues that the court's instruction that closing arguments are not evidence is sufficient to cure any impropriety because the jury is presumed to follow the court's instructions. However, given the particular circumstances of this case, we cannot conclude that such instruction was sufficient to render the misconduct harmless beyond a reasonable doubt.

The third factor supports a conclusion that the misconduct was not harmless beyond a reasonable doubt. "In close cases involving the credibility of witnesses, particularly where there are no disinterested witnesses or other corroborating evidence, this court has been reluctant to hold improper statements harmless." Tuua, 125 Hawai'i at 17, 250 P.3d at 280. The case against Canosa involving the CW in Counts I-III was dependant to a large degree on the credibility of the witnesses. There was limited physical evidence supporting the accusations

and, as to Counts I and II, there were witnesses on both sides as to whether Canosa was present at Keehi Lagoon at the time the incident allegedly occurred.

We conclude that the DPA's arguments that the debt owed to Canosa was only for $75 had a reasonable possibility of contributing to the jury's conviction of Canosa. However, the misconduct was not so egregious as to require reversal of the conviction. See State v. Rogan, 91 Hawai'i 405, 424, 984 P.2d 1231, 1250 (1999). Rather, Canosa is entitled to a new trial.

Because we conclude that a new trial is warranted, we need not reach Canosa's assertion of other alleged incidents of prosecutorial misconduct.

**IV. Motion to Sever**

Canosa argues that the circuit court abused its discretion in denying his motion to sever, which sought to have Counts I and II tried together, and all other counts tried separately. Canosa's argument to sever in regard to Counts IV and V is moot because he was acquitted on those counts. Our ruling that he is entitled to a new trial affects only Counts I-III.

On appeal, Canosa does contend that Counts I and II should be retried separately from Count III, but offers no substantive argument as to how he is prejudiced by the joinder of these three counts. HRPP Rule 14; see State v. Cordeiro, 99 Hawai'i 390, 411, 56 P.3d 692, 713 (2002) ("Joinder may prejudice a defendant by (1) preventing him or her from presenting conflicting defenses or evidence with respect to each charge, (2) permitting the prosecution to introduce evidence that would be inadmissible with respect to certain charges if tried separately, or (3) bolstering weak cases through the cumulative effect of the evidence."). Canosa has failed to demonstrate how the court abused its discretion by not severing Counts I-III.

## V. Conclusion

Based on the foregoing, the Judgment of Conviction and Sentence filed on November 29, 2011, in the Circuit Court of the First Circuit, is vacated as to the convictions for Counts I, II and III and the case is remanded for a new trial on these counts.

DATED:  Honolulu, Hawai'i, February 7, 2014.

On the briefs:

Emmanuel V. Tipon
(The Tipon Law Firm, LLLC)
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge